In the Matter of EWALD WEBER et al., Appellants, *v.* THEODORE H. LANG et al., Constituting the Department of Personnel, Civil Service Commission of the City of New York, et al., Respondents.

First Department, June 27, 1961.

Samuel Resnicoff for appellants.

Beatrice Shainswit of counsel (Seymour B. Quel with her on the brief; Leo A. Larkin, Corporation Counsel, attorney), for respondents.

Per Curiam. Petitioners-appellants are six civil service employees of New York City. They hold the position of Personnel Examiner, Grade 16 ($6,400 to $8,200 per annum). They achieved their positions by successful competition in a promotional examination and by appointment from a list established on December 29, 1958.

Appellants complained, in their petition under article 78 of the Civil Practice Act, of reclassification on August 23, 1960, without competitive examination, of six other Personnel Examiners into the higher position of Senior Personnel Examiner, Grade 18 ($7,100 to $8,900 per annum). Prior to general reclassification in 1955 under the Career and Salary Plan of 1954, the six employees, now reclassified for the second time, had achieved, by competitive examination, an unlimited salary grade. Appellants, on the other hand, all received their first civil service appointments after the general 1955 reclassification under the Plan.

As a result of the 1960 reclassification the six reclassified employees were assigned the higher duties of Senior Personnel Examiner — duties which they had not previously performed — together with the increased salary range allocated to the higher title.

The sole question raised on this appeal is whether the 1960 reclassification constituted a promotion without competitive examination in violation of section 6 of article V of the State Constitution and subdivisions 8 and 9 of section 52 of the Civil Service Law.

Special Term dismissed the petition upon the ground that those who were now again reclassified as Senior Personnel

Examiners, having been in an unlimited grade prior to the 1955 general reclassification, were not "promoted", and, consequently, the advance in title and salary range was not illegal.

For the reasons which follow, the order appealed from should be reversed and the 1960 reclassification of the six employees annulled.

In the first place the 1960 reclassification is not truly a reclassification except in name. No new titles or new job descriptions were promulgated, nor were new allocations made. The title, the job description, and the allocation appropriate thereto of the position of Senior Personnel Examiner Grade 18 had been effected in 1955 under the 1954 plan. All that happened in 1960 was that the six employees now described as reclassified were moved, without the benefit of competitive examination or position on an eligibility list, to the higher positions and the higher salaries allocated to them.

In the resolution which enacted the Career and Salary Plan, the Board of Estimate provided that permanent incumbents shall not suffer salary reductions or loss of any rights or status by virtue of adoption of the Plan (Resolution of the Board of Estimate, adopted July 9, 1954, § XII, subd. 1). In the implementing resolution, the City Civil Service Commission provided that any permanent employee entitled to an unlimited salary grade prior to classification or reclassification shall not be subject to a maximum salary notwithstanding classification under the Plan in a position having a maximum salary (Resolution of Civ. Serv. Comm., adopted Aug. 19, 1954, rule XI, § VII).

Upon these provisions the city bases its contention that the six reclassified employees were not unlawfully promoted but were merely advanced without competitive examination within the limits of those rights which were preserved to them under the Plan by virtue of their prior unlimited grade.

The provisions relied upon do not preserve such broad rights of advancement as the city claims. As a result of the general reclassification under the Career and Salary Plan, the six employees retained their unlimited grade for purposes of salary ranges and also received the benefits of the new position of Personnel Examiner. The title and job description specified for this position conformed to the duties the employees were then performing. No change of duties was involved. If such a change had been involved the result would have been an unlawful promotion, regardless of whether the new duties were comprehended within the previous unlimited grade (*Matter of*

*Mandle* v. *Brown,* 5 N Y 2d 51, 65). Thus, having received the new position, these employees were not thereafter entitled to be placed in a higher position, with higher duties and a higher minimum salary, merely because the same result, in terms of actual duties and actual salary, could previously have been accomplished within the limits of their old unlimited grade.

In short, the unlimited grade ceased to exist on reclassification. True, there was surviving provision for a reservation of rights, but this reservation extended only to relieving reclassified employees from the limits imposed by the new classifications and allocations. Thus, a reclassified employee, originally in unlimited grade, would not suffer limitation by way of maximum salary and perhaps of accruing salary increments, imposed as allocations on the new reclassified title. This is all that the '' reservation '' language provides: '' Any permanent employee entitled to an unlimited salary grade prior to the classification or reclassification of his position pursuant to the provisions of this rule shall continue to have such right and shall not be subject to a maximum salary, notwithstanding the fact that the position held by such employee may be classified or allocated to a salary grade having a maximum.'' (Resolution of Civ. Serv. Comm., adopted Aug. 19, 1954, rule XI, § VII, Rights and Status of Incumbents and Eligibles on Lists.)

So, too, the further provision of the original resolution of July 9, 1954 provided:

'' Section XII. Employees' Rights —

'' 1. The salary of any position which is subject to the provisions of this resolution shall not be reduced for the then permanent incumbent by reason of such provisions, nor shall the rights or status of such incumbent be in any way impaired or adversely affected by reason of the provisions of this resolution.''

The resolution makes clear that in no way may any employee, in unlimited grade or otherwise, suffer any loss of rights or status; but, of course, it alone warrants no improvement in rights or status, albeit there may have been opportunities for such improvement, prior to reclassification and reallocation, without the necessity of competitive examination or appointment.

The implementing resolution of the Civil Service Commission supports the foregoing analysis. Section IV provides: '' Such original position classifications and salary grade allocations shall be made, in the case of each position or class of positions, on the basis of the duties, responsibilities, and examination qualifications naturally and properly pertaining to the present title of such position or class of positions, without regard to out-of-title work performed by any incumbent thereof. *Thereafter, the*

*reclassification and salary grade reallocation of positions shall be made on the basis of the actual duties and responsibilities thereof and the examination requirements based on such duties and responsibilities as determined by the Department of Personnel.*" (Emphasis supplied.)

The city position would not only preserve to the reclassified employees the benefits of the old unlimited grade *and* the new position of Personnel Examiner, but would also confer the right to assume new and higher positions without competitive examination. This is neither compelled nor sanctioned by the Career and Salary Plan, and is not permissible under the Civil Service Law or the State Constitution.

The city concedes that the reclassified employees were not performing the duties of Senior Personnel Examiner prior to their most recent reclassification. Thus, this is not a case of conforming the civil service structure to the realities which obtained in the operation of the agency prior to the questioned reclassification (see *Matter of Mandle* v. *Brown,* 4 A D 2d 283, 286, affd. 5 N Y 2d 51, *supra*). Nor is this a case of granting a regular salary increase by virtue of the old unlimited grade held by the reclassified employees. The increase in salary followed upon their reclassification, and the reclassification was the sole justification for such increase. Hence, such increase, as well as the reclassification, was a promotion within the meaning of the Constitution and Civil Service Law and was barred without competitive examination (cf. *Matter of Williams* v. *Morton,* 297 N. Y. 328).

Accordingly, the order of Special Term should be reversed, on the law, with costs to appellants, the petition granted and respondents directed to discontinue the assignment of personnel to perform the duties of Senior Personnel Examiner who have not, prior to such assignment, lawfully performed the duties of such position or passed a competitive examination for and been appointed to such position, together with such other relief which may be appropriate in the premises. Settle order.

BOTEIN, P. J., BREITEL, RABIN, STEVENS and EAGER, JJ., concur.

Order entered on December 13, 1960, denying an application under article 78 of the Civil Practice Act and dismissing the petition which sought to oust six other Personnel Examiners from their appointments as Senior Personnel Examiners, unanimously reversed, on the law, with $20 costs and disbursements to appellants, the petition granted and respondents directed to discontinue the assignment of personnel to perform the duties of Senior Personnel Examiner who have not, prior to such

assignment, lawfully performed the duties of such position or passed a competitive examination for and been appointed to such position, together with such other relief which may be appropriate in the premises. Settle order on notice.